## GILMER v. HUNNICUTT.

1. INJUNCTIONS—JURISDICTION.—THIS COURT has original jurisdiction to issue writs of injunction.
2. CONSTITUTION—HIGHWAYS—OCONEE COUNTY—COUNTY COMMISSIONERS.—THE ACT (20 Stat., 1215,) authorizing county commissioners of Oconee County to change highway, and providing for assessment of damages to land-owner, is not contrary to Constitution of 1868, in depriving a land-owner of his land without trial by jury, nor to 5th amendment and sec. 1 of 14th amendment of U. S. Constitution, as to due process of law.
3. INJUNCTION refused, because of plaintiff's delay and laches.
4. HIGHWAY.—MANDAMUS will not lie to compel county commissioners to work an abandoned highway, where it is not shown that the highway has not been abandoned according to the method prescribed in such cases.

Petition for injunction and mandamus in the original jurisdiction of this Court by Robert A. Gilmer against James M. Hunnicutt, county supervisor, and F. W. Peiper and J. J. Haley, county commissioners of Oconee County.

*Mr. J. K. Earle,* for petitioner.

*Messrs. Stribling & Herndon,* contra.

April 3, 1900. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an application in the original jurisdiction of this Court. The petitioner seeks an injunction to restrain the defendants, who are admitted to be the County Board of Commissioners for Oconee County, from constructing and maintaining a new road across the lands of the petitioner in said county. He also seeks mandamus to compel the said commissioners to repair that portion of the original highway which was abandoned after the laying out of the new road.

The respondents first challenge the jurisdiction of this Court to entertain this proceeding. The argument is that the authority to allow injunctions is an incident of

chancery jurisdiction, and that by art. 5, sec. 4, of the Constitution, this Court has appellate jurisdiction only, in cases of chancery. This section, however, in express terms confers upon the Supreme Court power to issue writs of injunction, mandamus, &c. *Salinas* v. *Altman,* 49 S. C., 378.

The allegations of the petition are as follows: "I. That the plaintiff is the owner of a certain tract of land, situate in said county and State, containing          acres, lying on both sides of Chauga River, and has located on said lands a very valuable custom grist mill, a dwelling and other valuable improvements, and at and before the times hereinafter mentioned, the public highway was located and maintained within fifty yards of plaintiff's dwelling and mill, and a crossing maintained over said stream near said mill.    II. That the county board of commissioners in and for said county, on the three several days below mentioned, passed the three several resolutions in words and figures as follows, to wit: On April 4th, 1893, Resolved, that the clerk of this board employ a surveyor to survey a new road at Gilmer's and supervise the same, and that he make a contract for same. On May 2d, 1893, Whereas, in our judgment, steep places and some rough places can be avoided by a change in the public road near Gilmer's mill, it is ordered, that said road be changed so as to leave the public road near Hopewell Church and go to the right, and cross the old road and go to the left of the old road in about 300 yards, then along the old road about 150 yards, then to the right of the old road near a mile, and across Chauga Creek near about a half mile above the present bridge, thence to Toxaway road near 300 yards, thence said road to the Jarrett's Bridge road, then across that road to the Fort Madison road, a profile of which shall be filed in this office. On June 6th, 1893, Resolved, that in our opinion steep places and rough places can be avoided by a change in the public road known as the Jarrett's Bridge road, near R. A. Gilmer's; and whereas R. A. Gilmer will not give the right of way over his lands, therefore, it is ordered,

that a right of way over the lands of R. A. Gilmer is condemned by this board, and that R. E. Mason is hereby appointed as an arbitrator on behalf of this board to assess the damage of the said R. A. Gilmer by said road being built over his land. That the records do not show that there was ever any other or further action taken in reference to this road. III. That the clerk of said board of county commissioners and a surveyor by him employed soon after the passage of the resolution of April 4th, 1893, and the two subsequent, did go upon, lay out and construct and build a roadway upon and across plaintiff's lands, against his objections and solemn protest. IV. That the said board of county commissioners and clerk, their agents and servants, upon the adoption of the resolutions aforesaid, went into, upon and across plaintiff's lands for the purpose of laying out, opening, constructing and building upon and across plaintiff's lands a public roadway, and did destroy and appropriate to their purposes timber and other building material for the building of the said roadway upon and across plaintiff's lands a distance of 1,095 yards, against plaintiff's objections and protest. V. That the persons on the part of Oconee County and plaintiff attempted to be chosen to act as referred to in resolution of June 6th, 1893, failed and refused to act, and plaintiff repeatedly urged upon the county boards of commissioners the adjustment of his claim, which said board failed and refused to consider until on     , 1898, the said board selected P. P. Sullivan, and plaintiff promptly selected J. M. McClananan to act for him, these two selected E. C. Bercefeild, and the three rendered an award for plaintiff for six dollars, which was set aside for mistake in not properly assessing plaintiff's damages in the Court of Common Pleas, in an action brought by this plaintiff for that purpose, and plaintiff has never been paid or tendered any compensation whatever for the damages he sustained, though he has constantly and continuously urged a settlement upon the proper authorities. VI. That at the time the county commissioners, their clerk, agents and servants, committed the trespasses

hereinbefore mentioned, this plaintiff tendered them a right of way over his lands, and has ever since and does now make such tender, which would not have changed the general course of the road, and could have been opened and built at a much less cost than the route upon which they attempted to build and relocate the road, and upon a less grade, thus maintaining the road upon practically the said route and lands which it had been for more than fifty years; while the new route upon which they have attempted to relocate the road is near a half mile from plaintiff's residence and milling machinery, and discontinues the crossing over Chauga River at this point, and increases the distance of the custom of plaintiff's mill on the east side of Chauga River, which was considerable, more than one mile each way; and the distance of the new route from the divergent point to its intersection with the road is one mile further than the road as it stood on this graded route proposed by plaintiff; and that by reason of the attempted change the public is greatly inconvenienced and damaged in traveling from the neighborhood and to plaintiff's custom mill, and plaintiff in particular is greatly inconvenienced and damaged by said attempted change at least in the sum of $500.    VII. That the said pretended change amounts to the abolition of a public highway, against plaintiff's objection and solemn protest.    VIII. That said pretended condemnation proceedings were supposed to be authorized by and conducted under the special act of the legislature, incorporated in section 1188 of Revised Statutes (1893), which plaintiff alleges is unconstitutional and void. IX. That plaintiff is informed and believes that the great permanent injustice attempted to be done to him was prompted by the personal ill will of those who attempted to lay out and change the road.    X. Plaintiff alleges that the proceedings in the attempt to condemn the right of way over the lands are void: (1) because there could be no authority in the county board of commissioners to delegate to their clerk the power to employ a surveyor and lay out a highway; (2) private property cannot be appropriated to public use with-

out just compensation being first made therefor. XI. Plaintiff alleges that the act of the legislature aforesaid and the proceedings of the couuty commissioners are repugnant to and in contravention of the fifth amendment and section 1 of the fourteenth amendment of the Constitution of the United States, as the taking of private property without due process of law and without just compensation. XII. Plaintiff alleges that the act of the legislature and the proceedings of the county commissioners as aforesaid are repugnant to and in contravention of sections 15 and 23, of article I., of the Constitution of this State, as it is the taking of private property without due process of law and without just compensation being first made to the owner; and section 3, of article XII., of the Constitution of this State, as it deprives plaintiff of his right to a trial by a jury, taking his property without consideration or compensation. XIII. Plaintiff alleges that said act of the legislature was repealed by act of 1898, page 228, and by section 17 of article I., and section 20, of article IX., of the Constitution of 1895 of this State; that all of the proceedings of the county commissioners as aforesaid are void, and that the public road as located before said attempted change is the lawful and only public highway. XIV. That the county commissioners have failed and refused, and do now refuse, to put said road in reasonable repair for public use.

Wherefore, plaintiff prays: That the defendants and each of them, their agents and servants, their successors in office, their agents and servants, be perpetually enjoined and restrained from going upon, using or appropriating the said lands of the plaintiff for the purpose of constructing or maintaining a roadway. That mandamus do issue requiring the said defendants and their successors in office to repair that portion of the public highway which has been abandoned. And for such other and further relief as the Court shall see meet and proper, and for costs of this action."

The act under which the county commissioners proceeded

in the matter, 20 Stat., 1215, approved December 18, 1891, provides: "1. That the county commissioners * * * of Oconee County are hereby authorized and empowered to change the location of any of the public roads in * * * Oconee County, where in their judgment steep hills and rough places in said roads can be avoided by so doing.    2. That for the purpose of relocating such roads, they shall have the power to call to their assistance a surveyor, who shall survey and lay off such roads under their direction.    3. That said county commissioners shall have the power to condemn the land so laid off, and when the owner of said land will not give the right of way for such purpose, the damages to said owner shall be assessed in the following manner: the said county commissioners shall appoint one disinterested person and the land-owner shall appoint one disinterested person, and the two persons so appointed shall appoint a third person, and the three persons so appointed shall go upon the premises and assess the damages to said land-owner, which shall be paid by the county commissioners as other claims against the county are paid." The principal object of these proceedings is to have this Court determine the constitutionality of the above act. The act was passed previous to the Constitution of 1895, and must be tested by the provisions of the Constitution of 1868. The act does not violate the provision, art. I., sec. 11, as to trial by jury, as this provision did not inhibit legislation as to cases where the right of trial by jury did not exist at its adoption. *Frazee* v. *Beattie*, 26 S. C., 351. The proceedings to condemn land for a public road and assess compensation, was a special proceeding and not an action at law such as, under the practice prevailing at the adoption of the Constitution, entitled to a common law jury. Construing art. I., secs. 14 and 23, the Court, by Chief Justice Simpson, in *State* v. *Stackhouse*, 14 S. C., 424, speaking with reference to sec. 23, said: "It simply delegates the power in general terms to make laws for that purpose (securing a right of way), leaving the character and terms of the laws to the

law-making power of the State, the only condition being that a just compensation shall first be made to the owner of the property required to be sacrificed;" and in that case the Court held constitutional an act to empower a land-owner to secure a right of way over lands of others, through referees who were authorized to establish the road and award damages. The power sought to be exercised in act in question belongs to the power of eminent domain, which is clearly applicable to the establishment and maintainance of public highways, so essential to the public welfare. In 6 Ency. Law, 2d ed., p. 980, the following principle is stated and sustained by many cited cases: "In the proceedings incident to the exercise of the power of eminent domain, the citizen is not, as a matter of right, entitled to a common law jury to assess his compensation unless the Constitution so provides, in which latter case the right is absolute, regardless of statute." The Constitution of 1868 does not expressly provide that a common law jury shall assess compensation in matters of right of way. We are not now to consider the effect of the provision on this subject in art. IX., sec. 20, of the present Constitution. The Act does not deprive one of his property without due process of law and without compensation, for the machinery provided for condemnation *is* due process of law, and the act provides for the rendering of just compensation. The fact that there has been delay in determining the amount of such compensation relates to the procedure wherein petitioner himself is to some extent responsible, and does not affect the validity of the act. Without prolonging the discussion, we hold the act not violative of the Constitution of 1868.

The facts of this case do not warrant this Court to exercise its discretionary power to issue injunctions. It appears that the new road across a portion of petitioner's land was laid out in 1893, and has been maintained as a public road since. Petitioner's long delay and laches are sufficient to cause the Court to stay its hand. The opening of the road is an accomplished fact, and nothing

threatens petitioner in that regard. Having opened the road to the public, pursuant to the act, it is the duty of the defendant commissioners to keep it in repair. In reference to the matter of compensation to plaintiff, it appears by the untraversed return that plaintiff and the county commissioners have submitted that matter to referees or arbitrators, who made an award of six dollars to the plaintiff. That plaintiff brought an action in the Court of Common Pleas to set aside said award and that the Court set said award aside, and remanded the matter for trial by the same or other arbitrators, with instruction that they report according to principles stated. This proceeding is still pending. For all these reasons we must deny the injunction prayed for.

In reference to the application for mandamus to compel the commissioners to put in repair the old road, said to be abandoned. If abandoned according to the method prescribed in such cases, no duty devolves upon the defendant commissioners to keep it in repair. It not appearing that defendants refuse to discharge a plain ministerial duty imposed upon them by law, the writ should not go.

The petition is, therefore, dismissed.